UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  No. 23-MJ-153 |
| | ) |
| SAI KANDULA | ) |
| | ) |

**MOTION AND MEMORANDUM IN SUPPORT OF PRETRIAL RELEASE**

Sai Kandula, through the undersigned attorney, respectfully requests that this Court release him on bond pursuant to the Bail Reform Act, 18 U.S.C. § 3142 and *United States v. Salerno*, 481 U.S. 739 (1987). Mr. Kandula has set forth sufficient evidence to rebut the presumption of detention in this case. The government has also not met its burden to show either (1) by a preponderance of the evidence that Mr. Kandula is a risk of flight or (2) by clear and convincing evidence that no conditions can ensure the safety of the community. Mr. Kandula asks the Court to find that there are conditions that will reasonably ensure his appearance and ensure the safety of the community and to release him under those conditions.

**I.      Background**

Mr. Kandula was arrested on May 22, 2023, by a United States Park Police officer after exiting a U-Haul truck that struck a barrier at an entrance to Lafayette Park. Mr. Kandula followed all instructions from the officer, did not resist, and possessed no weapons on May 22, 2023. On May 23, 2023, the government filed a Criminal Complaint charging Mr. Kandula with depredation of property of the United States at a value exceeding $1000, pursuant to 18 U.S.C. § 1361. The government alleges that over $1000 of harm was done to the barricade struck by the U-Haul. Mr. Kandula appeared for an initial appearance on May 24, 2023 and a detention hearing was set for May 30, 2023. After a motion from Mr. Kandula, the Court continued the

1

detention hearing to June 9, 2023. The government argues for Mr. Kandula's detention as both a danger to the community and a risk of flight and argues that a rebuttable presumption applies under 18 U.S.C. § 3142(e)(3)(C).

## II. Legal Standard

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(b) and (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); *see also United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). "Nothing in this section shall be construed as modifying or limiting the presumption of innocence." 18 U.S.C. § 3142(j). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id*. at 1405.

Under 18 U.S.C. § 3142(e)(3)(C), a rebuttable presumption exists that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of the community where a defendant is charged with an offense listed under 18 U.S.C. § 2332b(g)(5)(B) with a maximum term of imprisonment of 10 years or more. Where the presumption applies, the Bail Reform Act imposes a "burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alitishe*,

768 F.2d 364, 371 (D.C. Cir. 1985). Such a burden is "not heavy" and only requires the production of "some evidence." *United States v. Bustamante-Conchas*, 557 Fed. Appx. 803, 806 (10th Cir. 2014).

Even in cases where a rebuttable presumption applies, it is ultimately the government's burden to demonstrate either by a preponderance of the evidence that the defendant is more likely than not to flee, or by clear and convincing evidence that preventative detention is necessary to ensure the safety of the community. *See United States v. Jessup*, 757 F.2d 378, 384 (1st Cir. 1985) (Breyer, J.). Under the Bail Reform Act, the Court must consider the following factors when determining whether the government has presented sufficient evidence that Mr. Kandula be detained: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the history and characteristics of the person charged; and (4) the nature and seriousness of the danger posed by the person to any person in the community if he is released. 18 U.S.C. § 3142(g).

It was Congress's intent with the Bail Reform Act to limit pretrial detention for only "*a small but identifiable group of particularly dangerous [persons]* as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community or other persons." S. Rep. No. 225, 98th Cong., 1st Sess. 6-7, reprinted in U.S. Code Cong. & Ad. News 3189 (emphasis added). Recent studies have highlighted the disparities and extremely high rates of pretrial detention, which highlights that the presumption is often given too much weight.[1]

---

[1] The disparities in detention and extremely high rates of detention were also recently studied by The University of Chicago Law School Federal Criminal Justice Clinic. The study finds that the presumption of detention is often given too much weight and "since people of color face criminal charges triggering the presumption more often than white arrestees, the misapplication of the presumption exacerbates racial disparities in the federal criminal system." Alison Siegler,

3

### III.    Mr. Kandula Does Rebut the Presumption of Detention with Credible Evidence.

Mr. Kandula does rebut the presumption of detention with "some credible evidence" that there are conditions, which would reasonably assure his appearance and the safety of the community. First, Mr. Kandula has strong family support, and his parents are willing to serve as third-party custodians if the Court releases Mr. Kandula to live with them in their home in Missouri. Mr. Kandula is a lawful permanent resident of the United States and has lived in the United States for over half of his life. He graduated from Marquette High School, *see* Ex. 1 (diploma), and he took some college courses at Maryville University over the last year. Mr. Kandula has always lived with his parents and his younger brother and can continue to live there pending resolution of this case.

Mr. Kandula has no prior criminal record. *See* Pretrial Services Report [Dkt. 5] (indicating Mr. Kandula has no prior convictions, cases pending, or bench warrants and assessing his risk level as "low"). He also has no history of violence, no history of possessing weapons, no access to weapons in his parents' home, and there are no allegations of violent acts in this matter. The government alleges that Mr. Kandula had violent intentions on May 22, 2023, which Mr. Kandula disputes. However, regardless of the allegations, Mr. Kandula did not possess any weapons or means to engage in any violent acts when he was arrested on May 22, 2023.

The foregoing facts rebut the presumption of detention in this case.

### IV.    The Government Cannot Meet Its Burden to Demonstrate that Mr. Kandula is a Flight Risk or Danger to the Community.

The D.C. Circuit recently reiterated the clear and convincing standard that the government must meet to justify detaining a defendant as a danger to the community:

---

*Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis*, Executive Summary at 26 (October 2022), available at https://freedomdenied.law.uchicago.edu/summary. The full report is also available here: https://freedomdenied.law.uchicago.edu/report.

> The crux of the constitutional justification for preventive detention under the Bail Reform Act is that '[w]hen the Government proves by clear and convincing evidence that *an arrestee presents an identified and articulable threat to an individual or the community*, . . . a court may disable the arrestee from executing that threat. . . . Therefore, to order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community.

*United States v. Munchel*, 991 F.3d 1273, 1282-83 (D.C. Cir. 2021) (quoting *Salerno*, 481 U.S. at 751) (emphasis added); *see also United States v. Patriarca*, 948 F.2d 789, 792 (1st Cir. 1991) (explaining that the defendant must pose an actual danger to community, not that the defendant in theory posed a danger to the community). The government has not and cannot meet its burden here, and Mr. Kandula should be released under conditions. The Bail Reform Act factors demonstrate that there are conditions or combinations of conditions that can reasonably assure Mr. Kandula's appearance at trial and protect the public.

  A.  *The Nature and Circumstances of the Offense*

  The Criminal Complaint charges Mr. Kandula with depredation of federal property, specifically damages to barriers and repairs to masonry. The government alleges that such damage exceeds $1000. Neither the Criminal Complaint nor the government's detention memorandum includes any allegations of violence, possession of a weapon, use of a weapon, or any other behavior to support a finding by clear and convincing evidence that Mr. Kandula would be a danger to the community if released.

  The statutory maximum penalty is not sufficient evidence to establish by a preponderance that Mr. Kandula would flee. In fact, although the statutory maximum is ten years, given the charge and Mr. Kandula's lack of criminal history, the applicable advisory Sentencing Guidelines range is significantly lower than ten years and provides no incentive to flee.

  Additionally, individuals charged with 18 U.S.C. § 1361 and who engaged in acts of

violence on January 6, 2021 were released pending trial, many of which with no opposition from the government. For example, Aiden Henry Bilyard was released on pretrial conditions and remained on bond even pending sentencing. He entered a guilty plea and admitted to spraying officers with "an orange-colored liquid spray containing a chemical agent – a deadly or dangerous weapon – toward [a] group of officers." *United States v. Bilyard*, No. 22-cr-34-RBW, Statement of Offense, ECF No. 39 at 3-4 (D.D.C. Oct. 20, 2022). Mr. Bilyard also admitted to overwhelming a police line with other rioters and using a baseball bat to shatter the glass on a window of the Senate Terrace Mezzanine Room 2. *Id*. The docket does not indicate that the government sought pretrial detention of Mr. Bilyard until after he entered a guilty plea. Mr. Bilyard's conditions of release did not even include GPS monitoring or a curfew. *See United States v. Bilyard*, No. 22-cr-34-RBW, Order Setting Conditions of Release, ECF No. 10 (D.D.C. Nov. 30, 2021).

In *United States v. Nix*, No. 21-cr-678-BAH, Mr. Nix was released pretrial on the High Intensity Supervision Program with Home Detention. He participated in the activities of January 6, 2021 and plead guilty to assaulting a police officer with a flagpole, specifically by striking the officer in the head with the flagpole and thrusting and throwing the flagpole at the officer. Mr. Nix admitted that he caused bodily injury to the officer. *See United States v. Nix*, No. 21-cr-678-BAH, Statement of Offense, ECF No. 38 at 4 (D.D.C. Dec. 16, 2022). *See also United States v. DeCarlo, et al.*, No. 21-cr-73-BAH (both defendants were released despite throwing smoke bombs at officers).

The Court should also consider the case of United States v. Deaton, No. 22-cr-335-MAU. While the circumstances of the two cases are not identical, there are particular similarities that are instructive and relevant. Mr. Deaton was charged with the same offense under § 1361,

6

damaged the Washington Monument to make a statement, and the government did not seek detention. Mr. Deaton, like Mr. Kandula, had no ties to Washington, D.C. and was homeless. Mr. Kandula, on the other hand, has a place to go and family willing to take him in and serve as third party custodians.

The nature and circumstances of the offense do not support detention in this case.

B.     The Weight of the Evidence

The weight of the evidence cannot be given undue consideration, and it is the least important factor for the Court to consider because Mr. Kandula is innocent until proven guilty and too much consideration of the weight of the evidence flies in the face of that important constitutional protection.  Additionally, Mr. Kandula has not been indicted, so there is no probable cause finding as to the allegations made by the government in the detention memorandum.  The government's allegations do not provide clear and convincing evidence that Mr. Kandula would be a danger to the community or risk of flight if released.  As previously stated, the proffer in the government's memorandum does not include any allegations of violence or indicate that Mr. Kandula possessed or used a weapon.  "Even overwhelming evidence of guilt would not, alone, meet [the clear and convincing test]." *United States v. Taylor*, 289 F. Supp. 3d 55, 66 (D.D.C. 2018).

C.     The History and Characteristics of Mr. Kandula

Mr. Kandula's history and characteristics not only rebut the presumption as discussed above, but also demonstrate that there are conditions of release that can reasonably assure his appearance and protect the community.  As noted above, Mr. Kandula has the dedication and support of his family, who want him to return home to live with them.  This Court has permitted criminal defendants to return to their homes and be supervised by their local pretrial services agencies in many January 6 cases, and the same is appropriate here.  While Mr. Kandula does not

7

have a long history of employment, he is only 19 years old and recently graduated from high school.  He has taken some classes at Maryville University and is still living at home.  Mr. Kandula has no prior criminal convictions.

The government highlights his immigration status.  It is important to note that the Bail Reform Act does not permit the pretrial detention based solely on an individual's immigration status.  The Bail Reform Act demands an individualized analysis of the § 3142(g) factors to determine whether a defendant should be released on bond prior to trial.  *See United States v. Santos-Flores*, 794 F. 3d 1088, 1092 (9th Cir. 2015) ("The court may not [ ] substitute a categorical denial of bail for the individualized evaluation required by the Bail Reform Act").  Because § 3142(g) demands such an individualized analysis, this Court cannot categorically deny bond to removable aliens solely on the basis of their immigration status or the existence of an immigration detainer.  *See United States v. Sanchez-Rivas*, 752 F. App'x 601, 604 (10th Cir. 2018) (holding that defendant "cannot be detained solely because he is a removable alien"); *Santos-Flores*, 794 F.3d 1088, 1092 (9th Cir. 2015) ("We conclude that the district court erred in relying on the existence of an ICE detainer and the probability of Santos–Flores's immigration detention and removal from the United States to find that no condition or combination of conditions will reasonably assure Santos-Flores's appearance pursuant to 18 U.S.C. § 3142(e)."); *United States v. Barrera-Omana*, 638 F.Sup.2d 1108, 1111 (D. Minn. 2009) (concluding that the mere presence of an ICE detainer does not override Congress' detention plan in § 3142(g)); *United States v. Chavez-Rivas*, 536 F. Supp. 2d 962, 968 (E.D. Wis. 2008)  ("[I]t would be improper to consider only defendant's immigration status, to the exclusion of the § 3142(g) factors, as the government suggests.").

The Court should not give undue weight to a defendant's alleged potential removability

or citizenship status. As the Tenth Circuit has observed, "although Congress established a rebuttable presumption that certain defendants should be detained, it did not include removable aliens on that list." *United States v. Ailon-Ailon*, 875 F.3d 1334, 1338 (10th Cir. 2017). Thus, Congress knew how to identify cases in which grounds for detention are intrinsic to the alleged offense. We also know that Congress explicitly contemplated the Bail Reform Act applying to non-citizen, non-LPRs who may be subject to detention by ICE (formerly INS). *See* 18 U.S.C. § 3142(d). So merely pointing to the defendant's status as a non-citizen, to his alleged removability, or to his generic ties to a foreign country[2] cannot be enough for the government to meet its burden of proving that no condition will "reasonably assure the appearance of the person as required." 18 U.S.C. § 3142(e)(1).

Mr. Kandula is a lawful permanent resident and has been lawfully in the country as a dependent of parents with lawful status for over half of his life. He lived in the United States, first as a small child, and again since the age of 11. While Mr. Kandula does have an Indian passport, it is counsel's understanding that Mr. Kandula had his passport with him when he was arrested and that it is currently in the possession of the government. If not, Mr. Kandula is willing to turn his passport over to pretrial services and participate in location monitoring.

Mr. Kandula's history and characteristics do not provide clear and convincing evidence to support his pretrial detention, but instead support release and indicate that a combination of conditions can protect the public and ensure Mr. Kandula's appearance at court.

D. *The Nature and Seriousness of the Danger to Any Person or the Community Posed by Mr. Kandula's Release*

The government has not and cannot provide clear and convincing evidence to support a

---

[2] The only specific tie the government alleges here is the presence of extended family. But Mr. Kandula has no means to flee and conditions can be set to mitigate any flight concerns, such as turning over his passport and participating in location monitoring.

finding that Mr. Kandula would be a danger to the community if released. First, the dangerousness analysis "does not turn on any generalized, backward-looking assessment" of the offender or the crime. *Munchel*, 991 F.3d at 1286 (Katsas, J., concurring). "Instead, it turns on a specific, forward looking assessment of whether" the individual "currently pose[s] an unmitigable threat to public safety." *Id*. The government has not and cannot provide specific evidence to support a finding that Mr. Kandula currently poses an unmitigable threat to public safety.

Despite the government's allegations that Mr. Kandula had some intent to cause harm, there are no allegations that any individuals were harmed by Mr. Kandula's actions or that the truck was deliberately driven towards any person. Mr. Kandula had no means to cause harm. He possessed no weapons. He put up no fight when he was approached by officers. He also has no means to cause harm if released. There are no weapons in his parents' home, and there never have been. Additionally, as described below, the Court can set conditions like home incarceration with location monitoring to mitigate any perceived risks.

The government has not met its burden to show either by clear and convincing evidence that Mr. Kandula is a danger or by a preponderance of the evidence that he is a risk of flight. Therefore, Mr. Kandula must be released on the least restrictive conditions.

**V.      Statistics Showing that It Is Extremely Rare for Defendants on Bond to Flee or Recidivate Demonstrate that Mr. Kandula Does Not Pose A Serious Risk of Flight or Danger to the Community.**

In this case, this Court should be guided by Administrative Office of the Courts statistics showing that nearly everyone released pending trial appears in court and does not reoffend. In fact, in 2019, 99% of released federal defendants nationwide appeared for court as required and

98% did not commit new crimes on bond.[3]  Significantly, this near-perfect compliance rate is equally evident in federal districts with very high release rates and those with very low release rates.[4]  Even in districts that release two-thirds of all federal defendants on bond, fewer than 1% fail to appear in court and just over 2% are rearrested while released.[5]  The below chart reflects this data:



---

[3] AO Table H-15 (Dec. 31, 2019), *available at* Mot. for Bond, *United States v. Rodriguez*, No. 19-CR-77 (E.D. Wis. Apr. 2, 2020), ECF No. 41, Ex. 1, archived at https://perma.cc/LYG4-AX4H (showing a nationwide failure-to-appear rate of 1.2% and a rearrest rate of 1.9%).

[4] The districts with the highest and lowest release rates were identified using the version of AO Table H-14A for the 12-month period ending December 31, 2019.  *See* AO Table H-14A (Dec. 31, 2019), https://perma.cc/32XF-2S42.  The failure-to-appear and rearrest rates for these districts were calculated using AO Table H-15.  The districts with the lowest release rates in 2019 were, from lowest to highest, S.D. California, W.D. Arkansas, E.D. Tennessee, S.D. Texas, E.D. Missouri, N.D. Indiana, E.D. Oklahoma, W.D. Texas, W.D. North Carolina, C.D. Illinois; the districts with the highest release rates are, from lowest to highest, E.D. Michigan, E.D. Arkansas, D. New Jersey, E.D. New York, D. Maine, D. Connecticut, W.D. New York, W.D. Washington, D. Guam, D. Northern Mariana Islands.  *See* AO Table H-14A.

[5] *See* AO Table H-15; AO Table H-14A.

**VI.     Mr. Kandula Must Be Released Because There Are Conditions That Will Reasonably Assure Appearance and Safety.**

Mr. Kandula must be released because there are conditions that will reasonably assure the safety of the community and Mr. Kandula's appearance in court. A defendant cannot be detained "unless a finding is made that no release conditions 'will reasonably assure . . . the safety of the community'" and the defendant's appearance in court. *United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (quoting 18 U.S.C. § 3142(e)). Here, the government has not carried its high burden of proving by clear and convincing evidence that there are no release conditions that will reasonably assure the safety of the community. *See id*. at 708 n.8. The government also has not proved by a preponderance of the evidence that there are no conditions that would reasonably assure Mr. Kandula's appearance in court. Thus, Mr. Kandula cannot be detained.

The following conditions of release under § 3142(c)(1)(B), and any other conditions the Court deems necessary, will reasonably assure Mr. Kandula's appearance in court and the safety of the community.

- Third party custodian;
- Home incarceration monitored by electronic monitoring;
- Report on a "regular basis" to PTS or some other agency, *id*. § 3142(c)(1)(B)(vi);
- Turn in passport to Pretrial Services;
- Refrain from possessing "a firearm, destructive device, or other dangerous weapon," *id*. § 3142(c)(1)(B)(viii);
- Refrain from "excessive use of alcohol," *id*. § 3142(c)(1)(B)(ix); and
- Refrain from "any use of a narcotic drug or other controlled substance . . . without a prescription," *id*. § 3142(c)(1)(B)(ix).

Because there are conditions of release that will reasonably assure Mr. Kandula's appearance in court and the safety of the community, he should be released.

## VII. Conclusion

For the foregoing reasons, Mr. Kandula respectfully requests that this Court find that the presumption has been rebutted and release him with conditions.

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Diane Shrewsbury
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500
